IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

SCOTTSDALE INDEMNITY COMPANY
One Nationwide Plaza
Columbus, Ohio 43215,

    Plaintiff,

v.

Case No. _____

ACCOUNTS RESEARCH, INC.
201 Center Park Drive, Suite 1070
Knoxville, Tennessee 37922,

and

TERRY JOE GUNTER
7721 Temple Acres Drive
Knoxville, Tennessee 37938-3264,

    Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint against Defendants Accounts Research, Inc. ("Accounts Research") and Terry Joe Gunter ("Gunter") (together, the "Insureds"), Plaintiff Scottsdale Indemnity Company ("Scottsdale") states the following.

### PARTIES

4.    Scottsdale is an insurance company duly organized and existing under the laws of the State of Ohio with its principal place of business located in Scottsdale, Arizona.

5.    Upon information and belief, Accounts Research is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business located in Knoxville, Tennessee.

6. Upon information and belief, Gunter is a resident of Knoxville, Tennessee and is or has been an employee of Accounts Research.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and the Insureds, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1). Accounts Research's principal place of business is in this District and Division, and Gunter resides in this District and Division.

## FACTUAL ALLEGATIONS

### The Policy

9. Scottsdale issued Business and Management Indemnity Policy No. EKI3245344 to Accounts Research (the "Policy") effective for the period from February 1, 2018 to February 1, 2019 (the "Policy Period"). A true and accurate copy of the Policy is attached to this Complaint at Exhibit 1.

10. Subject to the Policy's terms, conditions, limitations, exclusions, and endorsements, the Policy provides coverage under a Miscellaneous Professional Services Coverage Section (the "MPS Coverage Section"). (Exhibit 1 at Declarations, Item 3.)

11. The Limit of Liability of the Policy's MPS Coverage Section is $1 million for each "Claim" and in the aggregate. (Exhibit 1 at Declarations, Item 3.) That Limit of Liability is subject to a Retention of $25,000 for each "Claim" and a Retention of $50,000 for each "Designated Claim." (Exhibit 1 at Declarations, Item 3., and at Endorsement No. 3.)

12. "Designated Claim" is defined in Endorsement No. 3 of the Policy as any "Claim" "brought by or on behalf of more than one claimant, whether as a class action, an action seeking class certification, or in an otherwise common legal or factual capacity." (Exhibit 1 at Endorsement No. 3.)

13. Section D.1. of the Policy's MPS Coverage Section states: "The liability of the Insurer shall apply only to that part of Loss, which is excess of the Retention amounts applicable to this Coverage Section, as shown in Item 3 of the Declarations. The Insureds shall be responsible for payment of the Retentions, which the Insureds shall bear uninsured and at their own risk. If different parts of a single Claim are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such Loss, but the sum of such Retentions shall not exceed the largest applicable Retentions." (Exhibit 1 at Section D.1. of MPS Coverage Section.)

14. "Loss" is defined in Section B.7. of the MPS Coverage Section, as amended by Endorsements No. 3 and 4, as "damages, judgments, settlements, pre-judgment and post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by any of the Insureds." (Exhibit 1 at Section B.7. of MPS Coverage Section and Endorsement Nos. 3 and 4.)

15. The Policy defines "Costs, Charges and Expenses" to include "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims." (Exhibit 1 at Section B.4. of MPS Coverage Section.)

16. Section F.4. of the Policy's MPS Coverage Section provides that "[t]he Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that, in the event of a Claim, the Insureds will do nothing that shall

3

1322954:1:NASHVILLE
Case 3:19-cv-00029-TAV-DCP   Document 1   Filed 01/18/19   Page 3 of 7   PageID #: 3

prejudice the position of the Insurer or its potential or actual rights of recovery." (Exhibit 1 at Section F.4. of MPS Coverage Section).

17. Section J. of the Policy's General Terms and Conditions provides that "[t]he Insureds agree to provide Insurer with such information, assistance and cooperation as Insurer reasonably may request, and they further agree that they shall not take any action which in any way increases Insurer's exposure under this Policy." (Exhibit 1 at Section J of General Terms and Conditions.)

**The Underlying Actions**

18. Three lawsuits have been filed for which the Insureds seek coverage under the Policy: (1) *Amanda Walker f/k/a Amanda Haskins v. Accounts Research, Inc. and Terry Joe Gunter*, Case No. 3:18-cv-115, filed March 21, 2018 in the Eastern District of Tennessee (the "Walker Lawsuit"); (2) *Heather Engelke v. Accounts Research, Inc.*, Case No. 2:18-cv-00042, filed March 21, 2018 in the Eastern District of Tennessee (the "Engelke Lawsuit"); and (3) *Deborah Garrett, et al., v. Westside Gastrointestinal Specialists, PLLC, J. Tyler Roper, and Accounts Research, Inc.*, Case No. 3:18-cv-00273, filed July 20, 2018 in the Eastern District of Tennessee (the "Garrett Lawsuit") (collectively, the "Underlying Actions"). The Garrett Lawsuit is a putative class action.

19. Scottsdale is providing the Insureds with a defense in the Underlying Actions subject to a full reservation of its rights under the Policy and at law.

208. Scottsdale has on numerous occasions reasonably requested the assistance and cooperation of the Insureds in the defense of the Underlying Actions, including requesting Accounts Research to participate in telephone conferences to discuss defense strategy and to move the Underlying Actions toward potential resolution.

4

21. To date, the Insureds have ignored and not responded to Scottsdale's numerous requests for such assistance and cooperation.

22. The Insureds have violated Section F.4. of the Policy's MPS Coverage Section and Section J. of the Policy's General Terms and Conditions (the "Cooperation Clauses") by failing to provide Scottsdale with the assistance and cooperation it has reasonably requested. Scottsdale has been prejudiced by such failure and is likely to be further prejudiced if the Insureds continue to violate the Cooperation Clauses.

23. To date, the Retentions that the Insureds are responsible to pay under Section D.1. of the Policy's MPS Coverage Section have not been paid by the Insureds.

## COUNT I – DECLARATORY JUDGMENT AS TO THE INSUREDS' VIOLATION OF THE COOPERATION CLAUSES

24. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 23 of this Complaint.

25. An actual, present, and justiciable controversy exists concerning whether the Insureds have violated the Cooperation Clauses.

26. The Insureds' failure to respond to Scottsdale's reasonable requests for assistance and cooperation violates the Cooperation Clauses, and Scottsdale has been prejudiced thereby.

27. Scottsdale requests that the Court declare there is no coverage for the Underlying Actions under the Policy due to the Insureds' violations of the Cooperation Clauses and that, as a result, Scottsdale has no obligation to pay the Insureds any Loss, including Costs, Charges and Expenses, incurred in connection with the Underlying Actions.

## COUNT II – ALTERNATIVE DECLARATORY JUDGMENT AS TO THE INSUREDS' OBLIGATIONS TO SATISFY THE POLICY'S RETENTIONS

28. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 27 of this Complaint.

29. An actual, present, and justiciable controversy exists concerning whether Scottsdale has any obligations under the Policy unless and until the Insureds satisfy their responsibility to pay the applicable Retentions as set forth in Section D.1. of the Policy's MPS Coverage Section.

308. The Insureds have not satisfied their responsibility to pay the applicable Retentions.

319. In the event Scottsdale's request for declaratory judgment in Count I is denied, Scottsdale requests that the Court declare that Scottsdale has no obligation to pay the Insureds any Loss, including Costs, Charges and Expenses, incurred in connection with the Underlying Actions unless and until the Insureds satisfy their responsibility to pay the applicable Retentions.

## PRAYER FOR RELIEF

Wherefore, Scottsdale prays that the Court enter an Order:

1. declaring that there is no coverage for the Underlying Actions under the Policy due to the Insureds' violations of the Cooperation Clauses and that, as a result, Scottsdale has no obligation to pay any Loss, including Costs, Charges and Expenses, incurred in connection with the Underlying Actions;

2. alternatively declaring that Scottsdale has no obligation to pay any Loss, including Costs, Charges and Expenses, incurred in connection with the Underlying Actions unless and until the Insureds satisfy their responsibility to pay the applicable Retentions;

3. awarding Scottsdale its costs, expenses, and attorneys' fees to the greatest extent allowed by law; and

4. awarding Scottsdale all other relief the Court deems just and equitable.

Dated: January 18, 2019

*s/ John R. Wingo*
John R. Wingo (BPR No. 016955)
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 782-2200
Email: john.wingo@stites.com
*Counsel for Plaintiff Scottsdale Indemnity Company*